IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOROTHY G..,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 21 C 4224 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Dorothy G.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 16, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 17, Def.'s Mot.] is granted. The Court affirms the Commissioner's final decision.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

I.   **Procedural History**

On November 20, 2018, Plaintiff filed a claim for DIB, alleging disability since October 30, 2017, due to major depressive disorder, generalized anxiety disorder, and rheumatoid arthritis in the shoulders and lower back. [Dkt. 13-1, R. 54.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 53-59, 61-69.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 26, 2020. [R. 25-52.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 32-48.] Vocational expert ("VE") Glee Ann Kehr also testified. [R. 48-52.] On December 21, 2020, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 10-20.] The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1-6.]

II.  **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 14-15.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 30, 2017. [R. 15.] At step two, the ALJ concluded that Plaintiff had the following medically determinable impairments: anxiety disorder, substance abuse disorder, hypertension, gastroesophageal reflux disease (GERD), diverticulitis, and hiatal hernia. [R. 15-16.] However, the ALJ concluded that none of these impairments, alone or in combination, was severe. [R. 16-20.] Thus, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from her alleged onset date through the date of the ALJ's December 2020 decision. [R. 20.]

**DISCUSSION**

**I.     Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "The process is sequential, and if the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then she need not progress to the next step." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004)

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal

3

quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## II. Analysis

Plaintiff argues that the ALJ failed to appropriately evaluate the medical source opinion of Plaintiff's treating Certified Physician Assistant ("PA-C"), Michelle Horvath, and therefore the ALJ's denial of Plaintiff's disability claim was not supported by substantial evidence. [Dkt. 16,

4

Pl.'s Mem. at 8-13; dkt. 19, Pl.'s Reply at 1-3.] For the reasons that follow, the Court affirms the ALJ's decision.

As Plaintiff's claim for benefits was filed after March 17, 2017, the evaluation of medical opinion evidence is governed by 20 C.F.R. §404.1520c. Under that regulation, the opinions of treating physicians are not entitled to special deference or controlling weight. Rather, opinions from any medical source are evaluated against certain factors, including 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of time the source has treated the claimant, the frequency of examinations, and the purpose and extent of the treatment relationship, and whether the relationship was an examining one; 4) the source's specialization; and 5) other factors. 20 C.F.R. § 404.1520c. The "most important factors"—and the only factors that the ALJ is required to discuss in his decision—are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

PA-C Horvath filled out a medical opinion form on September 2, 2020. [R. 805-812.] In it, she stated that she had been treating Plaintiff twice per year since 2013 for conditions including hypertension, generalized anxiety disorder, insomnia secondary to anxiety, history of alcohol dependence, acute adjustment disorder with anxiety, GERD, fatty liver, and hiatal hernia. [R. 807.] She opined that Plaintiff was likely to be off-task for 25% of the typical workday, would be able to maintain attention and concentration for less than an hour before needing a break due to

5

symptoms such as pain or medication side effects, and would likely miss four or more days per month due to her impairments and/or treatment. [Id.] PA-C Horvath further opined that Plaintiff could continuously lift and carry up to 20 pounds and could occasionally lift or carry up to 50 pounds but would be limited to standing/walking only 6 hours in an 8-hour workday due to intermittent back pain. [R. 808.] The only other limitations PA-C Horvath opined upon were that Plaintiff should rarely climb ladders or scaffolds and rarely be exposed to unprotected heights due to a fear of heights, and that she could kneel only occasionally. [R. 810.]

The ALJ found these opinions "not persuasive" because PA-C Horvath "did not cite any objective evidence to support her conclusions" and the opinions were "not supported by the underlying treatment notes, which do not reflect any recent physical examinations." [R. 19.] The ALJ further noted that Ms. Horvath's last examination of the Plaintiff was a year prior, in August 2019, and was "unremarkable." [Id.] Moreover, the ALJ concluded that the treatment notes showed that Plaintiff exhibited "good symptom control" when she complied with treatment. [Id.]

Plaintiff argues that PA-C Horvath's opinions were, in fact, supported by her treatment notes. [Dkt. 16 at 10-11.] Plaintiff points to a treatment note from September 2018 where Plaintiff reported ongoing dizziness, inability to walk, and lightheadedness when standing up. [Id. at 10, citing R. 734.] Plaintiff also reported agoraphobia (fear of leaving her house) that had been ongoing for six months, mild depression, and anxiety. [R. 734-39.] Notably, the ALJ addressed this exact treatment note elsewhere in the decision and observed that, despite Plaintiff's reports, PA-C Horvath noted a "normal affect" and "mild anxiety" and did not make any changes to Plaintiff's treatment plan. [R. 17, citing 739.]

Plaintiff accuses the ALJ of "cherry-picking" evidence [dkt. 16 at 11], but the ALJ's discussion of the medical record is quite thorough. [R. 17-19.] The ALJ's discussion of the

6

September 2018 treatment note, for example, places it in the context of Plaintiff's symptoms of anxiety over time. [R. 17.] As the ALJ explained, Plaintiff presented as anxious, had a tremor in her hand, and had a hard time concentrating and staying on topic at an October 2017 appointment. [R. 17, citing R. 719, 723.] PA-C Horvath prescribed trazodone, alprazolam, and escitalopram. [R. 17, citing R. 824.] In November 2017, the claimant's doctor noted that she was improving and communicating more effectively, though she still had an anxious affect. [R. 728.] The following month, the doctor found that her mood and appearance were less anxious, her affect was normal, and she was talking less quickly. [R. 732.]. Plaintiff did not see PA-C Horvath again until the September 2018 appointment. [R. 734-741.] Just two months after that, at a November 2018 appointment, Plaintiff denied any symptoms of anxiety or depression. [R. 17, citing R. 699, 722-23, 728.] Plaintiff did not see PA-C Horvath again until August 2019, at which time PA-C Horvath noted normal mood, normal affect, and good communication skills, [R. 782], and instructed Plaintiff to restart Lexapro, [R. 783].

Not only did the ALJ thoroughly discuss the medical evidence, but also this Court finds that the ALJ sufficiently explained her rationale for rejecting the medical source's opinions of Plaintiffs' limitations. The ALJ was required to—and did—explicitly discuss the supportability and consistency of the medical source opinion. *See* 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion" and "consistency assesses how a medical opinion squares with other evidence in the record." *Michelle D. v. Kijakazi*, No. 21 CV 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520c(c)(1) and (2)).

As for supportability, the ALJ explained that she was rejecting PA-C Horvath's opinion because she had not cited any objective evidence to support her conclusions. This Court does not

find any error in this explanation. While PA-C Horvath's form opinion listed several different mental and physical medical conditions, when it came time to indicate the limitations that she believed Plaintiff to have, she did not explain which medical condition(s) led to those impairments, nor did she direct the ALJ to any objective clinical findings or evidence that Plaintiff's medical conditions caused those impairments.

Likewise, with respect to consistency, the ALJ explained that PA-C Horvath's underlying treatment notes were not consistent with her opined impairments and discussed the notes thoroughly, concluding that PA-C Horvath's treatment notes actually showed that Plaintiff's anxiety symptoms improved when she complied with treatment recommendations and that Plaintiff's most recent physical examination notes did not show any physical limitations. These are sound explanations, and Plaintiff has not demonstrated that the ALJ failed to review the underlying treatment records before concluding that the record did not support PA-C Horvath's opinion. Instead, Plaintiff has merely recited the record evidence and urged this Court to come to a different conclusion. It is not this Court's role to reweigh the evidence. *Anthony G. v. Saul*, No. 17 CV 4393, 2020 WL 439964, at *8 (N.D. Ill. Jan. 28, 2020) (explaining that the district court's role is "not to reweigh the evidence or substitute its judgment for the ALJ's with respect to how the conflicting medical opinions should be balanced").

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 16] is denied, and the Commissioner's motion for summary judgment [dkt. 17] is granted. The Court affirms the Commissioner's final decision.

8

**SO ORDERED.**

Date: 6/29/23

BETH W. JANTZ
United States Magistrate Judge